IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Shake Shoppe LLC, | : | |
| 383 Jackson Pike | : | |
| Gallipolis, Ohio 45631 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:21-cv-00278 |
| | : | |
| Shake Shoppe Ironton LLC | : | |
| 103 Freeman Ct. | : | |
| South Point, Ohio 45680, | : | |
| | : | |
| Defendant | : | |

_____

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Shake Shoppe LLC, (hereinafter "Shake Shoppe") by and through its counsel

and for its complaint hereby alleges as follows for its Complaint against the Defendant, Shake

Shoppe Ironton LLC (hereinafter "the Defendant"):

**NATURE OF THE ACTION**

1. This is an action for trademark infringement and unfair competition under federal law

   and under the statutory and the common law of the state of Ohio.

2. Shake Shoppe brings this action to prevent and halt consumer confusion and mistake

   as to the source, affiliation or sponsorship of Shake Shoppe's goods and services on

   one hand and the Defendant's goods and services on the other hand, stemming from

   the infringement of Shake Shoppe's trademark rights and acts of unfair competition

   by the Defendant.

3. Shake Shoppe seeks preliminary and permanent injunctive relief as well as monetary relief for the Defendant's infringement of Shake Shoppe's trademark rights and acts of unfair competition.

## THE PARTIES

4. Plaintiff Shake Shoppe LLC is an Ohio limited liability company with its principal place of business in Gallipolis, Ohio.

5. Upon information and belief, the Defendant, Shake Shoppe Ironton LLC, is an Ohio limited liability company having a place of business in Ironton, Ohio.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7. Shake Shoppe's claims are based on the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and substantial and related claims under the statutory and common law of the state of Ohio.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of property that is the subject of the action is situated in this District.

9. Personal jurisdiction is proper in this Court because the Defendant has a place of business within the state of Ohio and within this District and regularly conducts business within the state of Ohio and within this District.

10. The Defendant's unlawful acts that are the subject of this Complaint include acts that were purposefully committed within the state of Ohio and within this District.

11. Personal jurisdiction is also proper in this Court because the Defendant's services are advertised and offered within the state of Ohio and within this District, which advertising and services are the subject of this litigation.

## FACTUAL ALLEGATIONS

12. Plaintiff SHAKE SHOPPE traces its trademark rights from at least as early as 1954, when Frank L. Snedaker ("Mr. Frank Snedaker") began utilizing SHAKE SHOPPE as a trademark (hereinafter "the SHAKE SHOPPE mark") in commerce in conjunction with offering restaurant services at a restaurant in Gallipolis, Ohio.

13. The following picture shows Mr. Frank Snedaker and his wife Marge sitting beneath a sign for SHAKE SHOPPE:



14. In conjunction with offering his restaurant services in commerce, Mr. Frank Snedaker adopted and begin using a variety of trademarks including the following:

    a.  SHAKE SHOPPE (OLD ENGLISH LETTERS)



b.

("KEYSTONE COP DRINKING MILK SHAKE")



c.

("Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes")

4



d.

("Shake Shoppe Milkshake Logo")

e. THAT OLD-FASHIONED GOODNESS



f.

(the "Stuftshirt" mark)

15. Upon information and belief, the design elements of at least some of the foregoing marks were created by Marge Snedaker who originally drew them by hand.

16. All of the foregoing marks were put into use in interstate commerce by Mr. Snedaker in conjunction with at least restaurant services by at least as early as 1956.

17. Mr. Frank Snedaker eventually opened two SHAKE SHOPPE restaurants in Gallipolis, Ohio and was utilizing the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark (collectively referred to as "the Shake Shoppe marks") in conjunction with restaurant services.

18. In 1961, Mr. Frank Snedaker registered the THAT OLD-FASHIONED GOODNESS mark as associated with food products and utilized on advertising, packaging, letterheads, stationery, and signage for his restaurant in the state of Ohio. The THAT OLD-FASHIONED GOODNESS trademark was assigned Ohio Registration No. TM4038.

19. In 1968, Shake Shoppe Franchises, Inc. was established in the state of Ohio to franchise the operation of SHAKE SHOPPE restaurants as drive-in restaurants using a unique atmosphere, format, style and merchandising method.

20. The principal office of Shake Shoppe Franchises, Inc. was in Gallipolis, Ohio.

21. Mr. Frank Snedaker was the president and registered agent of Shake Shoppe Franchises, Inc.

22. In 1986, Shake Shoppe, Inc., having a business address in Gallipolis, Ohio, was established with the Ohio Secretary of State.

23. In 1988, Shake Shoppe, Inc. registered the Keystone Cop Drinking a Milk Shake trademark as associated with "restaurant, ice cream, sandwiches, chicken and fast foods" with the state of Ohio which was assigned Trademark Reg. No. TM 12225.

24. As of 1988 Jeffrey L. Snedaker ("Mr. Jeff Snedaker"), the son of Mr. Frank Snedaker and Marge Snedaker, was president of Shake Shoppe, Inc.

25. In 1988, Shake Shoppe, Inc. registered the Shake Shoppe Milkshake Logo as associated with "restaurant, ice cream, sandwiches, chicken and fast foods" with the state of Ohio which was assigned Trademark Reg. No. TM 12226.

26. In 1991, Mr. Frank Snedaker assigned the THAT OLD FASHIONED GOODNESS trademark to Shake Shoppe, Inc.

27. In 1998, the previously discussed Ohio registrations for the Shake Shoppe Milkshake Logo, the Keystone Cop Drinking Milkshake, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes trademarks were cancelled after not being renewed.

28. In 2001, Shake Shoppe, Inc. was dissolved.

29. Documents associated with the 2001 dissolution of Shake Shoppe, Inc. provide that at the time of its dissolution, Mr. Jeff Snedaker was the only director of Shake Shoppe, Inc. and was also the only officer of Shake Shoppe, Inc.

30. Upon the dissolution of Shake Shoppe, Inc., Mr. Jeff Snedaker became the owner of the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the

Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark.

31. Ownership of the THAT OLD-FASHIONED GOODNESS trademark of Ohio Reg. No. TM4038 was updated with the Ohio Secretary of State to reflect Mr. Jeff Snedaker's ownership.

32. In 2002, Mr. Jeff Snedaker filed new applications with the State of Ohio to register the Keystone Cop Drinking Milkshake and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes trademarks.

33. In 2002, the Keystone Cop Drinking Milkshake mark was registered to Mr. Jeff Snedaker by the Ohio Secretary of State as evidenced by Ohio Registration No. 1287571.

34. In 2002, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark was registered to Mr. Jeff Snedaker by the Ohio Secretary of State as evidenced by Ohio Registration No. 1287570.

35. In 2002, Mr. Jeff Snedaker filed an application to register the SHAKE SHOPPE (old English letters) trademark as associated with restaurant advertising with the state of Ohio.

36. The SHAKE SHOPPE (old English letters) trademark was registered to Mr. Jeff Snedaker in 2002 by the Ohio Secretary of State as evidenced in Ohio Registration No. 1287572.

37. In August of 2009, Mr. Jeff Snedaker, Plaintiff's predecessor in interest, created a SHAKE SHOPPE social media profile on Facebook (@shakeshoppe) to advertise its restaurant services under the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old

English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark.

38. The following are some exemplary screenshots from the Plaintiff's SHAKE SHOPPE Facebook account:







39. In December of 2009, Plaintiff, Shake Shoppe LLC, was established with the Ohio Secretary of State, by Mr. Timothy Snedaker (Jeff Snedaker's son), and Timothy Snedaker formally took over the family business in January 2010.

40. In 2012, Mr. Jeff Snedaker assigned the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark to Mr. Timothy Snedaker.

41. In 2014, the Plaintiff created new digital renderings of its trademarks including, but not limited to, the following:











Collectively referred to herein as the "SHAKE SHOPPE digital renderings."

42. The Plaintiff created the SHAKE SHOPPE digital renderings to utilize in advertising its restaurant services, to use in conjunction with offering its restaurant services, and to place on goods it sold in commerce.

43. For example, the SHAKE SHOPPE digital renderings were utilized by the Plaintiff to create new menus, within its restaurants, and within and throughout its social media accounts.

44. The Plaintiff's SHAKE SHOPPE profile on Facebook predominantly features the SHAKE SHOPPE logo of the SHAKE SHOPPE digital renderings and emphasizes a red, white, and blue color scheme.

45. The following images are exemplary of menus utilized by the Plaintiff that incorporate the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and some of the SHAKE SHOPPE digital renderings:





46. The Plaintiff has also utilized the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and at least some of the SHAKE SHOPPE digital renderings on its website, www.shake-shoppe.com where it has advertised its restaurant services since at least as early as the fall of 2015.

47. In addition to their use in conjunction with restaurant services, the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark have been applied to a variety of goods by the Plaintiff and its predecessors-in-interest over the years.

48. For example, since at least as early as October of 2015, the SHAKE SHOPPE trademark has been applied to articles of clothing sold in interstate commerce by the Plaintiff.

49. The SHAKE SHOPPE trademark has also been applied to the packaging associated with food goods, such as hamburgers, hot dogs, and french fries for example, sold in interstate commerce by the Plaintiff and its predecessors-in-interest since the 1950's.

50. Mr. Tim Snedaker formally assigned his trademark rights to the Plaintiff Shake Shoppe LLC in 2019.

51. True and accurate copies of Ohio Registration Nos. 1287572, 1287571, and 1287570 and a true and accurate copy of the renewal certificate for TM4038, all of which trademarks are owned by the Plaintiff, are attached hereto respectively as Exhibits A, B, C, and D. *See* Declaration of Melissa Rogers McCurdy attached hereto as Exhibit E.

52. On November 14, 2019, the Plaintiff filed U.S. Application Ser. No. 88/692,471 ("the '471 Application") with the United States Trademark office to federally register THAT OLD FASHIONED GOODNESS as associated with restaurant services in international class 043.

53. The '471 Application was filed based on use in commerce at least as early as 1956.

54. On June 9, 2020, the USPTO registered U.S. Application Ser. No. 88/692,471 as U.S. Registration No. 6,074,934 ("the '934 Registration). A true and accurate copy of the '934 Registration and corresponding status documents from the United States Trademark Office's TSDR system are collectively hereby attached as Exhibit F. *See* Ex. E, McCurdy Decl. at ¶¶ 13 – 14.

55. On November 14, 2019, the Plaintiff filed U.S. Application Ser. No. 88/692,473 (the '473 Application) with the United States Trademark Office to federally register the Stuftshirt mark as associated with restaurant services in international class 043.

56. The '473 Application was filed based on use in commerce at least as early as 1956.

57. On June 9, 2020 the USPTO registered U.S. Application Ser. No. 88/692,473 as U.S. Registration No. 6,074,935.   A true and accurate copy of the '935 Registration and corresponding status documents from the United States Trademark Office's TSDR system are collectively hereby attached as Exhibit G.  *See* Ex. E, McCurdy Decl. at ¶¶ 15 – 16.

58. On November 14, 2019, the Plaintiff filed U.S. Application Ser. No. 88/692,474 (the '474 Application) with the United States Trademark Office to federally register the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark as associated with restaurant services in international class 043.

59. The '474 Application was filed based on use in commerce at least as early as 1956.

60. On June 23, 2020 the USPTO registered U.S. Application Serial No. 88/692,474 as U.S. Registration No. 6,084,331 ("the '331 Registration").  A true and accurate copy of the '331 Registration and corresponding status documents from the United States Trademark Office's TSDR system are collectively hereby attached as Exhibit H.  *See* Ex. E, McCurdy Decl. at ¶¶ 17 – 18.

61. On December 5, 2019, the Plaintiff filed U.S. Application Serial No. 88/716,075 ("the '075 Application") to register SHAKE SHOPPE in standard characters as associated with "coats; hats; jackets; shirts, sweatshirts" in international class 025.

62. The '075 Application was based on use in commerce at least as early as October 9, 2015.

63. On March 21, 2021 the USPTO registered U.S. Application Serial No. 88/716,075 as U.S. Registration No. 6,298,012 ("the '012 Registration"). A true and accurate copy of the '012 Registration and corresponding status documents from the United States Trademark Office's TSDR system are collectively hereby attached as Exhibit I. *See* Ex. E, McCurdy Decl. at ¶¶ 19 – 20.

64. Including use made by its predecessors-in-interest, the Plaintiff has continuously used the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark in interstate commerce as associated with restaurant services since at least as early as 1956.

65. U.S. Trademark Registration Nos. 6,074,934, 6,074,935, 6,084,331, and 6,298,012, are in good standing, are owned by the Plaintiff, and create a presumption that the THAT OLD FASHIONED GOODNESS mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and the SHAKE SHOPPE mark are valid and owned by the Plaintiff.

66. Upon information and belief, the Defendant Shake Shoppe Ironton LLC was established with the Ohio Secretary of State on June 7, 2019.

67. Upon information and belief, the Defendant began operating a restaurant in Ironton, Ohio under the SHAKE SHOPPE trademark during June of 2019.

68. Upon information and belief, the Defendant has been utilizing the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark in commerce in conjunction with offering restaurant services since June of 2019.

69. Upon information and belief, sometime in or around June 2019, the Defendant accessed the Plaintiff's SHAKE SHOPPE Facebook account and/or the Plaintiff's website and made copies of the SHAKE SHOPPE digital renderings.

70. Upon information and belief, on June 12, 2019 the Defendant established a Facebook Profile SHAKE SHOPPE IRONTON (@shakeshoppeironton) to advertise its restaurant services under the SHAKE SHOPPE trademark, the SHAKE SHOPPE (old English Letters) trademark, the SHAKE SHOPPE logo, the THAT OLD-FASHIONED GOODNESS trademark, the Keystone Cop Drinking Milk Shake mark, the Stuftshirt mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark.

71. Upon information and belief, the Defendant utilized the Plaintiff's SHAKE SHOPPE trademarks including the SHAKE SHOPPE digital renderings to create their SHAKE SHOPPE IRONTON Facebook account.

72. The Defendant's SHAKE SHOPPE IRONTON Facebook profile emphasizes the SHAKE SHOPPE logo and a red, white, and blue color scheme just like the Plaintiff's SHAKE SHOPPE Facebook profile.

73. The following screenshots are taken from the Defendant's SHAKE SHOPPE

IRONTON Facebook profile:





74. Upon information and belief, in or around August of 2019, the Defendant utilized at least some of the Plaintiff's SHAKE SHOPPE Digital Renderings of the SHAKE SHOPPE Trademarks to create menus to use in conjunction with offering restaurant services under the SHAKE SHOPPE Trademarks.

21

75. Upon information and belief, the following images show a menu the Defendant created using the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings:





76. Upon information and belief, the menu of the Defendant shown above was utilized and is still being utilized in commerce in conjunction with offering restaurant services under the SHAKE SHOPPE Trademarks.

77. Upon information and belief, the Defendant has also utilized at least some of the Plaintiff's SHAKE SHOPPE Trademarks and SHAKE SHOPPE Digital Renderings to place on food products.

78. The following image is exemplary of how the Defendant has utilized the Plaintiff's SHAKE SHOPPE Digital renderings to sell food in commerce:



79. Upon information and belief, the Defendant also utilized the Plaintiff's SHAKE SHOPPE Trademarks and at least some of the Plaintiff's SHAKE SHOPPE Digital Renderings to have large graphics made for the windows of its SHAKE SHOPPE restaurant.

80. The following image taken from the Defendant's SHAKE SHOPPE IRONTON Facebook profile shows the window graphics which were made utilizing the Plaintiff's SHAKE SHOPPE trademarks and the Plaintiff's SHAKE SHOPPE Digital Renderings being installed in July of 2019:



81. Upon information and belief, shortly after beginning its use of the Plaintiff's SHAKE

SHOPPE Trademarks in conjunction with offering restaurant services in commerce,

the Defendant began advertising its SHAKE SHOPPE restaurant on the radio

(hereinafter "the Defendant's radio advertisements").

82. Upon information and belief, shortly after beginning its use of the Plaintiff's SHAKE SHOPPE Trademarks in conjunction with offering restaurant services in commerce, the Defendant began advertising its restaurant services under the SHAKE SHOPPE trademarks on television (hereinafter "the Defendant's television advertisements").

83. At least some of the SHAKE SHOPPE Trademarks were utilized in the Defendant's radio and television advertisements.

84. The Defendant's radio advertisements and the Defendant's television advertisements were broadcast over a wide area of the state of Ohio including into and around Gallipolis, Ohio.

85. Upon information and belief, the Defendant knew that the Plaintiff was operating restaurants under the SHAKE SHOPPE trademarks in Ohio and within this District prior to when the Defendant commenced operating a restaurant under the SHAKE SHOPPE trademarks.

86. Upon information and belief, the Defendant knew that the Plaintiff had registered at least some of the SHAKE SHOPPE trademarks with the state of Ohio prior to when the Defendant commenced operating a restaurant under the SHAKE SHOPPE trademarks.

87. Not only is the Defendant utilizing the identical SHAKE SHOPPE trademarks to offer identical services as the Plaintiff, but the Defendant has literally taken the Plaintiff's SHAKE SHOPPE Digital renderings to utilize in running and advertising its business.

88. Upon information and belief, sometime between June of 2019 and November 2019, the Defendant began selling shirts including sweatshirts and tee shirts under the SHAKE SHOPPE trademark and SHAKE SHOPPE logo:



89. Though the Plaintiff's SHAKE SHOPPE Trademarks were at one point non-exclusively licensed to an entity to be utilized in conjunction with offering restaurant services at a restaurant in Ironton, Ohio, the Defendant does not have and has never had a license to utilize the Plaintiff's SHAKE SHOPPE Trademarks.

90. The Defendant does not have and has never had permission to use the Plaintiff's SHAKE SHOPPE Trademarks.

91. No licensee of the Plaintiff's SHAKE SHOPPE Trademarks has ever been granted rights to utilize the trademarks online to create a Facebook profile.

92. No licensee of the Plaintiff's SHAKE SHOPPE Trademarks has ever been granted rights to utilize the SHAKE SHOPPE Trademarks on clothing including tee shirts and sweatshirts.

93. No licensee of the Plaintiff's SHAKE SHOPPE Trademarks has ever been granted rights to utilize the SHAKE SHOPPE Trademarks in radio advertisements.

94. No licensee of the Plaintiff's SHAKE SHOPPE Trademarks has ever been granted rights to utilize the SHAKE SHOPPE Trademarks in television advertisements.

95. No licensee of the Plaintiff's SHAKE SHOPPE Trademarks has ever been granted rights to advertise a SHAKE SHOPPE restaurant in or around Gallipolis, Ohio.

96. No one has ever been granted permission by the Plaintiff to utilize the Plaintiff's SHAKE SHOPPE Digital Renderings.

97. On information and belief, Defendant has no documents conveying or transferring a license in any of the SHAKE SHOPPE Trademarks to the Defendant from any party.

98. Defendant's unauthorized copying and use of the SHAKE SHOPPE Digital Renderings is evidence of Defendant's lack of rights regarding the SHAKE SHOPPE Digital Renderings.

99. The Defendant's utilization of the SHAKE SHOPPE Trademarks in conjunction with offering identical goods and services that the Plaintiff offers under the SHAKE SHOPPE Trademarks has caused actual confusion among consumers regarding whether the goods and services of the Defendant emanate from or are somehow sponsored or approved by the Plaintiff.

100. The Defendant's radio and television advertisements have reached the regular customers of the Plaintiff and have caused and are causing confusion in the marketplace regarding whether the goods and services of the Defendant emanate from or are somehow sponsored or approved by the Plaintiff.

101. The Defendant's creation and utilization of a Facebook profile to advertise its restaurant services that incorporates the Plaintiff's SHAKE SHOPPE Trademarks and the Plaintiff's SHAKE SHOPPE digital renderings has caused and is causing confusion in the marketplace regarding whether the goods and services of the Defendant emanate from or are somehow sponsored or approved by the Plaintiff.

102. The Defendant's sale of clothing under the SHAKE SHOPPE Trademark is likely to cause confusion in the marketplace regarding whether the goods emanate from or are somehow sponsored or approved by the Plaintiff.

103. Prior to filing this case, the Plaintiff contacted the Defendant via a letter dated April 21, 2020 regarding its use of the SHAKE SHOPPE Trademarks and the Plaintiff's

SHAKE SHOPPE Digital Renderings and requested that the Defendant cease its infringement.

104. Since its letter of April 21, 2020, the Plaintiff has requested numerous times that the Defendant cease infringing upon the Plaintiff's SHAKE SHOPPE Trademarks and discontinue use of the Plaintiff's SHAKE SHOPPE Digital Renderings.

105. Despite numerous communications on the issue, the Defendant has continued to utilize the Plaintiff's SHAKE SHOPPE Trademarks and SHAKE SHOPPE Digital Renderings in offering restaurant services and various goods such as clothing and food in commerce.

106. Upon information and belief, the Defendant is utilizing the Plaintiff's SHAKE SHOPPE Trademarks and the Plaintiff's SHAKE SHOPPE Digital renderings in interstate and Ohio commerce in direct competition with the Plaintiff.

107. The Defendant, without permission and in spite of numerous prior written and verbal warnings not to do so, continues to use Plaintiff's registered SHAKE SHOPPE Trademarks in interstate commerce in direct competition with the Plaintiff's use of its trademarks.

108. The Defendant, without permission and in spite of numerous prior written and verbal warnings not to do so, continues to use the Plaintiff's Trademarks in interstate and Ohio commerce competing in the marketplace with the Plaintiff for the same consumers of Plaintiff's restaurant services, clothing, and food goods.

109. Upon information and belief, the Defendant has been using the Plaintiff's SHAKE SHOPPE trademarks and the Plaintiff's SHAKE SHOPPE Digital renderings knowing it will (or is at least likely to) confuse consumers into believing the

restaurant, clothing and food goods offered by the Defendant emanate from or are endorsed or sponsored by or are somehow affiliated with the Plaintiff, when they are not.

110. The Defendant's ongoing, unauthorized uses of Plaintiff's marks in commerce has diverted business away from the Plaintiff and has caused actual damage to Plaintiff.

111. Consumers have actually been confused by the Defendant's commercial use of the Plaintiff's SHAKE SHOPPE Trademarks.

112. The natural, probable, foreseeable and actual result of the Defendant's wrongful conduct is to cause consumer confusion, deception and mistake in the marketplace, to harm the Plaintiff's business reputation and goodwill, and injure the Plaintiff's relationships with existing and prospective consumers.

113. The Plaintiff has sustained and will continue to sustain damages as a result of the Defendant's wrongful conduct.

114. Upon information and belief, the Defendant has engaged in its unlawful activities knowingly and intentionally and with reckless disregard for the Plaintiff's rights in the SHAKE SHOPPE Trademarks.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

115. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

116. The Defendant has used in commerce reproductions, colorable imitations of, and counterfeits of the Plaintiff's registered THAT OLD FASHIONED GOODNESS mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and the SHAKE SHOPPE mark in conjunction

31

with the sale, offering for sale, distribution, and/or advertising of goods and services likely to cause confusion, or to cause mistake, or to deceive in violation of Sections 32(1)(a) and (1)(b) of the Lanham Act, 15 U.S.C. § 1114(1)(a), 1114(1)(b).

117. The Plaintiff's federal registrations on the Principal Register of the U.S. Trademark Office for the THAT OLD FASHIONED GOODNESS mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and the SHAKE SHOPPE mark (U.S. Trademark Registration Nos. 6,074,934, 6,074,935, 6,084,331, and 6,298,012) constitute *prima facie* and/or conclusive evidence of the validity of the marks, the Plaintiff's ownership of the marks, and the Plaintiff's exclusive right to use the marks in commerce with the listed goods and services pursuant to Lanham Act, 15 U.S.C. § 1115.

118. The Defendant's commercial use of the Plaintiff's marks has been and continues to be done with the intent to cause confusion, mistake and to deceive consumers concerning the source and/or sponsorship of the Defendant's goods and services.

119. The Defendant has been utilizing the Plaintiff's SHAKE SHOPPE Trademarks and SHAKE SHOPPE digital renderings as trademarks and service marks.

120. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered and will continue to suffer irreparable harm to Plaintiff's THAT OLD FASHIONED GOODNESS mark, the Stuftshirt mark, the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark, and the SHAKE SHOPPE mark and to Plaintiff's business, goodwill, reputation, and profits.

121. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained from further infringement of the Plaintiff's Trademarks. An award of money

damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff lacks an adequate remedy at law.

122. The Defendant's foregoing acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

123. The Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT II – FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP (15 U.S.C. § 1125 (a)(1)(A))

124. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

125. The Plaintiff's SHAKE SHOPPE Trademarks are well-established marks that serve to identify the services emanating from, sponsored by, approved by. authorized by, associated with, or affiliated with Plaintiff.

126. The Plaintiff's SHAKE SHOPPE Digital Renderings have been utilized by Plaintiff to create a commercial impression upon its customers and they also serve to identify the services emanating from, sponsored by, approved by, authorized by, associated with, or affiliated with Plaintiff.

127. The Defendant knowingly used and continues to use the Plaintiff's SHAKE SHOPPE marks and SHAKE SHOPPE digital renderings in connection with restaurant services, food products, clothing, and related advertising which are substantially

identical to the goods and services offered by the Plaintiff. The Defendant's actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a).

128. The Defendant has been utilizing the Plaintiff's SHAKE SHOPPE Trademarks and SHAKE SHOPPE digital renderings as trademarks and service marks.

129. Prior to the Defendant's commercial use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings, the Defendant had actual and constructive knowledge of Plaintiff's use and ownership of the Plaintiff's marks and digital renderings in connection with the goods and services offered by the Plaintiff.

130. Upon information and belief, the Defendant has used and continues to use the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's Digital Renderings in connection with restaurant services, food products, clothing, and related advertising in a manner that is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant's goods and services and is likely to cause consumers to erroneously believe that the Defendant's goods and services have been authorized, sponsored, approved, endorsed, or licensed by the Plaintiff or that the Defendant's goods and services are in some way affiliated with the Plaintiff.

131. The Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitutes false designation of origin and/or sponsorship and unfair competition in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

132. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered and will continue to suffer irreparable harm to Plaintiff's SHAKE SHOPPE Trademarks and to Plaintiff's business, goodwill, reputation, and profits.

133. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained from further infringement of the Plaintiff's Trademarks and from further use of the Plaintiff's SHAKE SHOPPE Digital Renderings. An award of money damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff lacks an adequate remedy at law.

134. The Defendant's foregoing acts of unfair competition and false designation of origin have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

135. The Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT III – VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT
### (O.R.C. §4165.02)

136. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

137. Upon information and belief, the Defendant has used and continues to use the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's SHAKE SHOPPE Digital Renderings in connection with restaurant services, food products, clothing, and related advertising in a manner that is likely to

confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendant's goods and services and is likely to cause consumers to erroneously believe that the Defendant's goods and services have been authorized, sponsored, approved, endorsed, or licensed by the Plaintiff or that the Defendant's goods and services are in some way affiliated with the Plaintiff.

138. The Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitute deceptive trade practices in violation of O.R.C. § 4165.02(A)(1), (2), (3), and (7).

139. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered and will continue to suffer irreparable harm to Plaintiff's SHAKE SHOPPE Trademarks and to Plaintiff's business, goodwill, reputation, and profits.

140. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained from further infringement of the Plaintiff's Trademarks and from further use of the Plaintiff's SHAKE SHOPPE Digital Renderings. An award of money damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff lacks an adequate remedy at law.

141. The Defendant's deceptive trade practices have been and continue to be deliberate, willful, and wanton.

142. The Court should award the Plaintiff its reasonable attorney's fees pursuant to O.R.C. § 4165.03(B).

143. The Plaintiff is entitled to a preliminary and permanent injunction against the Defendant pursuant to O.R.C. § 4165.03(A)(1) as well as all other remedies available including but not limited to, compensatory damages, treble damages, disgorgement of profits and costs and attorneys' fees. *See* O.R.C. § 4165.03(C).

## COUNT IV – TRADEMARK INFRINGEMENT UNDER OHIO STATUTORY LAW

### (O.R.C. 1329.65)

144. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

145. The Plaintiff's SHAKE SHOPPE mark, THAT OLD-FASHIONED GOODNESS trademark, Keystone Cop Drinking Milk Shake mark, and the Man and Woman Riding Bicycle Built for Two and Each are Drinking Milk Shakes mark have been validly registered with the State of Ohio. *See* Ohio Registration Nos. 1287572, 1287571, 1287570, and renewal certificate for TM4038. Ex. Nos. A, B, C, and D; *see also* McCurdy Decl., Ex. E, at ¶¶ 1 – 12.

146. Without the consent of the Plaintiff, the Defendant has used reproductions, counterfeits, copies, and colorable imitations of the Plaintiff's trademarks which are the subject of Ohio Registration Nos. 1287572, 1287571, 1287570, and TM4038 in connection with the Defendant's sale, offering for sale, and advertising of restaurant services, food products, clothing, and related advertising in a manner likely to cause confusion or mistake or to deceive as to the source or origin of the Defendant's goods and services in violation of O.R.C. §1329.65(A).

147. Without the consent of the Plaintiff, the Defendant has reproduced, counterfeited, copied, and colorably imitated the Plaintiff's trademarks which are the subject of

Ohio Registration Nos. 1287572, 1287571, 1287570, and TM4038 and has applied

the reproduction, counterfeit, copied, and colorably imitated marks to labels, prints,

packages, wrappers, and advertisements intended to be used in conjunction with the

sale and distribution in Ohio of Defendant's goods and services in violation of O.R.C.

§1329.65(B).

148. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered

and will continue to suffer irreparable harm to Plaintiff's SHAKE SHOPPE

Trademarks which are the subject of Ohio Registration Nos. 1287572, 1287571,

1287570, and TM4038 and to Plaintiff's business, goodwill, reputation, and profits.

149. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained

from further infringement of the Plaintiff's Trademarks.  An award of money

damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff

lacks an adequate remedy at law.

150. The Defendant's acts of infringement have been and continue to be deliberate, willful

and wanton and have been carried out with the knowledge that its use of the marks is

likely to cause confusion or mistake as to the source of origin of its goods and

services.

151. The Plaintiff is entitled to actual damages and the Defendant's profits pursuant to

O.R.C. § 1329.66.

152. The Plaintiff is entitled to a preliminary and permanent injunction against the

Defendant pursuant to O.R.C. § 1329.66 as well as all other remedies available

including but not limited to, compensatory damages, treble damages, disgorgement of

profits, and costs and attorneys' fees.

## COUNT V – UNFAIR COMPETITION UNDER THE

## COMMON LAW OF OHIO

153. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

154. The Plaintiff's SHAKE SHOPPE Trademarks are well-established marks that serve to identify the services emanating from, sponsored by, approved by. authorized by, associated with, or affiliated with Plaintiff.

155. The Plaintiff's SHAKE SHOPPE Digital Renderings have been utilized by Plaintiff to create a commercial impression upon its customers and they also serve to identify the services emanating from, sponsored by, approved by, authorized by, associated with, or affiliated with Plaintiff.

156. The Plaintiff's SHAKE SHOPPE trademarks have been utilized in commerce continuously by Plaintiff and its predecessors in interest for decades in conjunction with the provision of various goods and services offered in interstate commerce and throughout the state of Ohio.

157. The Defendant knowingly used and continues to use the Plaintiff's SHAKE SHOPPE marks and SHAKE SHOPPE digital renderings in connection with restaurant services, food products, clothing, and related advertising which are substantially identical to the goods and services offered by the Plaintiff.

158. The Defendant has elected to utilize the Plaintiff's SHAKE SHOPPE Digital Renderings in commerce in order to appear practically identical to the Plaintiff and make it impossible or nearly impossible for customers to distinguish between the entities.

159. The Defendant is offering its goods and services under the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's Digital Renderings, and advertising the same, in the zone of penetration where consumers have come to identify the marks as source identifiers of the Plaintiff.

160. Prior to the Defendant's commercial use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings, the Defendant had actual and constructive knowledge of Plaintiff's use and ownership of the Plaintiff's marks and digital renderings in connection with the goods and services offered by the Plaintiff.

161. Upon information and belief, the Defendant has used and continues to use the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's Digital Renderings in connection with restaurant services, food products, clothing, and related advertising in a manner that is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public, including those within the state of Ohio, as to the origin, source, sponsorship, or affiliation of Defendant's goods and services and is likely to cause consumers to erroneously believe that the Defendant's goods and services have been authorized, sponsored, approved, endorsed, or licensed by the Plaintiff or that the Defendant's goods and services are in some way affiliated with the Plaintiff.

162. The Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitutes unfair competition under the common law of the state of Ohio.

163. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered and will continue to suffer irreparable harm to Plaintiff's SHAKE SHOPPE Trademarks and to Plaintiff's business, goodwill, reputation, and profits.

164. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained from further infringement of the Plaintiff's Trademarks and from further use of the Plaintiff's SHAKE SHOPPE Digital Renderings. An award of money damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff lacks an adequate remedy at law.

165. The Defendant's foregoing acts of unfair competition have been and continue to be deliberate, willful and wanton.

166. The Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies, including but not limited to, compensatory damages, disgorgement of profits, and costs and attorneys' fees.

## COUNT VI – COMMON LAW TRADEMARK INFRINGEMENT

167. The Plaintiff incorporates and realleges as if stated fully herein the allegations of Paragraphs 1 through 114.

168. The Plaintiff's SHAKE SHOPPE Trademarks are well-established marks that serve to identify the services emanating from, sponsored by, approved by. Authorized by, associated with, or affiliated with Plaintiff.

169. The Plaintiff's SHAKE SHOPPE Digital Renderings have been utilized by Plaintiff to create a commercial impression upon its customers and they also serve to identify the services emanating from, sponsored by, approved by, authorized by, associated with, or affiliated with Plaintiff.

170. The Plaintiff's SHAKE SHOPPE trademarks have been utilized in commerce continuously by Plaintiff and its predecessors in interest for decades in conjunction with the provision of various goods and services offered in interstate commerce and throughout the state of Ohio.

171. The Defendant knowingly used and continues to use the Plaintiff's SHAKE SHOPPE marks and SHAKE SHOPPE digital renderings in connection with restaurant services, food products, clothing, and related advertising which are substantially identical to the goods and services offered by the Plaintiff.

172. The Defendant has elected to utilize the Plaintiff's SHAKE SHOPPE Digital Renderings in commerce in order to appear practically identical to the Plaintiff and make it impossible or nearly impossible for customers to distinguish between the entities.

173. The Defendant is offering its goods and services under the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's Digital Renderings, and advertising the same, in the zone of penetration where consumers have come to identify the marks as source identifiers of the Plaintiff.

174. Prior to the Defendant's commercial use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings, the Defendant had actual and constructive knowledge of Plaintiff's use and ownership of the Plaintiff's marks and digital renderings in connection with the goods and services offered by the Plaintiff.

175. Upon information and belief, the Defendant has used and continues to use the Plaintiff's SHAKE SHOPPE Trademarks (and/or colorable imitations thereof) and the Plaintiff's Digital Renderings in connection with restaurant services, food

products, clothing, and related advertising in a manner that is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public, including those within the state of Ohio, as to the origin, source, sponsorship, or affiliation of Defendant's goods and services and is likely to cause consumers to erroneously believe that the Defendant's goods and services have been authorized, sponsored, approved, endorsed, or licensed by the Plaintiff or that the Defendant's goods and services are in some way affiliated with the Plaintiff.

176. The Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitutes trademark infringement under the common law of the state of Ohio.

177. As a direct and proximate result of the Defendant's actions, the Plaintiff has suffered and will continue to suffer irreparable harm to Plaintiff's SHAKE SHOPPE Trademarks and to Plaintiff's business, goodwill, reputation, and profits.

178. The Plaintiff will continue to be irreparably harmed unless the Defendant is restrained from further infringement of the Plaintiff's Trademarks and from further use of the Plaintiff's SHAKE SHOPPE Digital Renderings. An award of money damages alone cannot fully compensate the Plaintiff for its injuries and the Plaintiff lacks an adequate remedy at law.

179. The Defendant's foregoing acts of trademark infringement have been and continue to be deliberate, willful and wanton.

180. The Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies, including but not limited to, compensatory damages, disgorgement of profits, and costs and attorneys' fees.

**WHEREFORE,** the Plaintiff prays for judgment in its favor against the Defendant as follows:

1) A determination that the Defendant has violated 15 U.S.C. §§ 1114 (1)(a) and/or (1)(b), that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

   a. the Defendant's acts of infringement have been and continue to be deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a); and

   b. the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees;

2) A determination that the Defendant has violated 15 U.S.C. §§ 1125(a)(1)(A) and (a)(1)(B), that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

   a. the Defendant's actions render this case exceptional within the meaning of 15 U.S.C. § 1117(a); and

   b. the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available under the Lanham Act, including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees;

3) A determination that the Defendant has committed deceptive trade practices in violation of O.R.C. § 4165.02(A)(1), (2), (3), and (7), that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

   a. the Defendant's deceptive trade practices have been and continue to be deliberate, willful, and wanton.

   b. the Plaintiff should be awarded its reasonable attorney's fees pursuant to O.R.C. § 4165.03(B); and

   c. the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant pursuant to O.R.C. § 4165.03(A)(1) as well as all other remedies available including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees. *See* O.R.C. § 4165.03(C);

4) A determination that the Defendant has used reproductions, counterfeits, copies, and colorable imitations of the Plaintiff's trademarks which are the subject of Ohio Registration Nos. 1287572, 1287571, 1287570, and TM4038 in violation of O.R.C. §1329.65(A), that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

   a. the Defendant's acts of infringement have been and continue to be deliberate, willful and wanton;

   b. the Plaintiff is entitled to actual damages and the Defendant's profits pursuant to O.R.C. § 1329.66;

      c.  the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant pursuant to O.R.C. § 1329.66 as well as all other remedies available including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees.

5)  A determination that the Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitutes unfair competition under the common law of the state of Ohio that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

      a.  the Defendant's acts of infringement have been and continue to be deliberate, willful and wanton;

      b.  the Plaintiff is entitled to actual damages and the Defendant's profits;

      c.  the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees;

6)  A determination that the Defendant's use of the SHAKE SHOPPE Trademarks and the SHAKE SHOPPE Digital Renderings in providing restaurant services, food products, clothing, and related advertising constitutes trademark infringement under the common law of the state of Ohio that the Plaintiff has been damaged by such violations, and that the Defendant is liable to the Plaintiff for such violations including but not limited to a finding that:

a.  the Defendant's acts of infringement have been and continue to be deliberate, willful and wanton;

b.  the Plaintiff is entitled to actual damages and the Defendant's profits;

c.  the Plaintiff is entitled to a preliminary and permanent injunction against the Defendant as well as all other remedies available including but not limited to, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees;

7)  Under all claims for relief, that a preliminary and permanent injunction issue enjoining the Defendants and its employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

a.  imitating, copying, or making any unauthorized use of the Plaintiff's SHAKE SHOPPE Trademarks or any marks confusingly similar thereto and of the Plaintiff's SHAKE SHOPPE Digital Renderings;

b.  importing, manufacturing, producing, circulating, selling, offering for sale, advertising, promoting or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the Plaintiff's SHAKE SHOPPE Trademarks or any marks confusingly similar thereto and of the Plaintiff's SHAKE SHOPPE Digital Renderings;

c.  using any false designation of origin or false description or performing any act which is likely to lead members of the trade or public to believe that any service or product manufactured, distributed, or sold by the Defendant is in any manner associated or connected with the Plaintiff or is sold, manufactured, licensed,

47

       sponsored, approved, or authorized by or is somehow affiliated with the Plaintiff; and

    d.  engaging in any other activity constituting unfair competition with Plaintiff or acts and practices that deceive the public and/or the trade;

8) For an award of statutory damages to Plaintiff pursuant to 15 U.S.C. § 1117;

9) For an order directing that the Defendant delivers for destruction all products, labels, badging, tags, signs, prints, packages, videos, and advertisements in the Defendants' possession and under the Defendants' control, created by the Defendants or on their behalf bearing or using the Plaintiff's SHAKE SHOPPE Trademarks or any marks confusingly similar thereto and of the Plaintiff's SHAKE SHOPPE Digital Renderings, pursuant to 15 U.S.C. § 1118;

10) For an order directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any service or product manufactured, sold or otherwise circulated or promoted by the Defendant in commerce is authorized by the Plaintiff or related in any way to the Plaintiff's goods or services;

11) For an award of Plaintiff's actual damages, and directing that such damages be trebled, pursuant to 15 U.S.C. § 1117;

12) For an award of Plaintiff's attorneys' fees, costs and disbursements incurred in this action pursuant to 15 U.S.C. § 1117;

13) For an award of punitive damages as deemed necessary, and as allowed by applicable law, in light of the Defendant's willful and wanton wrongdoing;

14) For an award of interest, including pre-judgment and post-judgment interest on the foregoing sums;

15) For an award of such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a jury trial of all issues triable by jury.

Dated: April 19, 2021              Respectfully submitted,

                          /s/ Melissa A. Rogers McCurdy
                          Jeffrey S. Standley (Ohio Bar 0047248)
                          Melissa A. Rogers McCurdy (Ohio Bar 0084102)
                          STANDLEY LAW GROUP LLP
                          6300 Riverside Drive
                          Dublin, OH 43017
                          Telephone: (614)792-5555
                          Facsimile: (614)792-5536
                          Email:  jstandley@standleyllp.com
                                  mmccurdy@standleyllp.com

                          *Counsel for Plaintiff Shake Shoppe LLC*